Weldon, J.,
delivered the opinion of the court:
This is a proceeding based upon a contract, dated the 13th day of July, 1895, between the claimant and the defendants, for the building of a temporary post-office in the city of Chicago, Ill., for which the claimant was to receive, in the aggregate, the sum of $124,930, which sum has been fully paid. The contract is set forth as Exhibit A of the petition, and was approved by the Secretary of the Treasury on the 31st of July, 1895. The time limit in which the work was to be performed was ten weeks from the date of the approval of the contract.
It is alleged in the fourth paragraph of the petition that in accordance with said contract the claimant performed all the work and furnished all the materials provided for, and that in addition thereto he did other work and furnished other materials, which were accepted b}'' the defendants, amounting to the sum of $9,188.04, for which no payment has been made.
In the fifth paragraph it is alleged that at the request of the United States he did certain other extra work and furnished other material, amounting in value to the sum of $1,372.30.
It is further alleged, in the seventh paragraph, that at the request and instance of the defendants he furnished other material and did other extra work, amounting to the sum of $6,338.15.
It is also further averred that, by the delay and changes made in the construction of said building bjr the defendants, the completion of the contract was carried over into cold ■weather, and that in consequence of that fact he was compelled to heat the building at an expense of $770.19, for which he claims compensation.
*658 It is also alleged that the claimant, in the acceptance of his bid, was to be furnished immediately with all the details and drawings of the work; that such details and drawings were not furnished, but, on the contrary, the claimant was unreasonably delayed by the defendants; that there was a constant changing of the plans by the defendants, to the prejudice of the claimant; that the defendants failed and neglected to appoint an inspector, thereby increasing the cost of the work;, that on August 15, 1895, the excavation of the basement was suspended by order of the defendants, and the claimant was put to great disadvantage, in consequence of which the building was not completed until the 1st of April, 1896; that owing to the failure to furnish the details aforesaid, the time for the completion of the contract was extended nearly six months beyond the period in which the same could have been performed; that in consequence of such delay the most of the work on the building had to be done after the cold weather had set in, and for that reason it was much more expensive than it would have been if the claimant had been able to complete the building within the period named in the contract; that in consequence of such delay he was compelled to pay overtime to men employed, expenses of insurance, watchmen, foremen, and superintendents of construction, amounting to the sum of $10,528.16.
It is further averred that in consequence of the time being-extended, as above stated, the claimant lost the use and value of his plant, which might have been profitably employed elsewhere, and was compelled to pay a large amount of interest on the money invested in the building, and that during said time he was compelled to rent an office and pay the expense of an office force of clerks, bookkeepers, etc.; that in consequence of the delay and said expenses the claimant was damaged to the extent of $14,000.
The claim for extra labor and materials is set forth in finding in and shows the character of the work and the circumstances under which it was done.
In that connection it is important to note a clause of the contract providing for extras to the work agreed to be performed b3r the terms of the contract. It is provided that “no claim for compensation for any extra materials or work is to be made or allowed without the same being first agreed upon *659 and specially authorized in writing- by the Supervising Architect, under the approval of the Secretary of the Treasury.” The contract was originally made by the Supervising Architect subject to the approval of the Secretar}', so that the same must be held to be in the official power and keeping of the Supervising Architect and the Secretary during the entire period of its execution bjT the claimant.
Finding n, shows that in some instances the Supervising-Architect had knowledge of the performance of the work, but in no instance is it shown that the Secretary approved of the change or addition, in pursuance of the terms of the agreement.
Item 1 for §19.65, as shown in finding m, was done by the order of the Government superintendent of construction and with the knowledge of the Supervising Architect, but it does not appear that the Secretary had any knowledge or approved of it in any wajr.
Item 2 of finding in is for pumping out the basement for inspection. It is shown that the Government superintendent of construction and inspector of buildings and the Supervising-Architect had knowledge of it, but it does not appear that the Secretary approved it.
The basement was inspected three or four times and the water had to be pumped out for that purpose, and it had to be, as shown in the findings, pumped out to complete the work, which being true, the claimant is not entitled to recover upon that item, as it was his duty to have done the pumping, not onl}' for inspection, but for the completion of the work.
As to item 3. This item is allowed for the reason that the defendants obstructed the claimant in the performance of the contract, and therefore responsible.
Item I is a claim for shoring a safe. Five safes were placed in the building and four onl}- have been paid for. The instructions of the Supervising Architect were to allow §10 for. each safe. This work was not authorized in writing by the (Supervising Architect and it does not appear that it was done with approval of the Secretary.
As to item o, the findings show that it was done, by agreement without extra charge.
Item 6, for extra cost of mailing platform shed, §488.10. This was built according to detail plans which were, to be *660 furnished subsequent to the original plans and specifications. If this was extra it was done without the authority of the Supervising Architect or the approval of the Secretaiy.
Item 7, claim for additional scuttles. This claim is for alleged difference between the original and detail plans. It does not appear that the attention of the superintendent of construction was called to the difference in the plans and no order was given for additional scuttles by the Supervising Architect.
Item 8, $324, for the difference between iron and wood. The original plans said nothing about the material of the trusses, and no special order was given to make them of iron except so far as the detail plans required it.
Item 9, amounting to $251, for partition changes in second story. The claim in this particular originates from the omission of Section A, which was provided for in the contract. There was no order given to the claimant for these changes except to follow detail plans, and the contract provided for detail plans to be furnished after the original plans wore given to the contractor. No order was given by the Supervising Architect.
Item 10, $24, for shelving in linen room. In the performance of this work the claimant followed detail plans, and no order was given.
Item 11, 10 feet of extra pipe, amounting to the sum of $20. It does not appear that the Supervising Architect authorized or had any knowledge that more than two sections of pipe were put into the building. It was ordered by the superintendent of construction.
Item 12, amounting to $138, for 46 batten doors. These doors open into the skylight well, and without them the openings would have been left, making the wells dangerous. These were put in following the detail plans. No order was given by the Supervising Architect.
Item 13, amounting to $733. The detail plans furnished after the contract was awarded required these straps and bolts, and they were accordingly furnished. It does not appear that there was any order for them by the Supervising Architect with the approval of the Secretary.
Item 14, $66, for joist straps and bolts. These straps and *661 bolts were put in the building following the detail plans, and no order was given by the Supervising Architect.
Item 15, sand used to cover approaches. This claim is disallowed, as no order was given by the Supervising Architect and it was the duty of the contractor to keep the building in good order up to the time of its delivery. The order was given by the Government superintendent in order to accommodate the house to the use of the post-office, but no order was given by the Supervising Architect. •
Item 16, painting roofs and skylights, $625. No allowance can be made for this, for the reason that the painting required by the contract after being done became impaired in many places by bad weather and by the employees of the claimant and of other contractors walking over the roof of the building. This work was done by order of the Government inspector, and no authority is shown from the Supervising Architect or the Secretary.
Items 17 and 18, for replacing glass broken by other contractors before the acceptance of the building. The glass was broken by employees of other contractors at work on. the building and by claimant’s employees, therefore the United States should not be held responsible. Besides, no order was given by the Supervising Architect, approved by the Secretary, and in addition it was the duty of the claimant to care for and protect the building until its final completion and acceptance.
Item 19, putting in new partition and changing location of doorway, $37.50. This was arranged for and requested by the Government superintendent and the postmaster at Chicago. No authority is shown from the Supervising Architect or the Secretary of the Treasury.
All the items in finding hi are disallowed, except item 3, $134.78. The items embraced in finding v are allowed to the extent of $1,666.87, as shown in the conclusion of law; also items 10, 11, and 12, amounting to $287.50. The sum of $399.69 is allowed on finding vn, it being the increased cost of masonry and carpenters’ and laborers’ work and overtime on work performed by carpenters and laborers prior to November 20, 1895, which increased cost resulted from the failure of the defendants in furnishing detail plans called for by *662 the contract and other failures, as shown in finding iv, in consequence of which failures on the part of the defendants the increased cost of labor was suffered by the claimant.
As to the claim for $770.19 alleged in the petition, but little, if any, of that expense was incurred by the claimant before the 20th of November, the period within which the claimant might have performed the contract, notwithstanding the delay of the defendant, as shown in finding iv. There can be no recovery upon that charge for the reason that it is not shown what portion of the claim accrued before the termination of the prolonged period from October 8 to November 20.
As to the claim of damages for the prolonged period in the loss of the use of the plant of claimant, rent of office, interest, wages of clerks, the evidence is too general and unsatisfactory to establish damages occurring between the 8th of October and the 20th of November, and, therefore, no findings can be made on that branch of the case, conceding that for some of the claim for the alleged damages the claimant might be entitled to recover.
Upon the whole case a judgment is allowed in the sum of $2,488.84, as shown in the conclusion of law.